DUTTON *against* GILLET.

*A.* and *B.* made their submission to arbitrators, stating, that whereas they had a cause subsisting between them relative to the right of turning the water from a certain spring or rivulet, each one claiming the right to turn the water on to his own land, they submitted the same matter to the final decision of *C.* and *D.*; engaging to abide such decision under a penalty. The arbitrators made an award in which they decided what were the rights of the parties, respectively, in relation to the use of the water, and prescribed the mode in which those rights should be exercised. In an action of *assumpsit*, brought by *A.* against *B.*, for an alleged violation of *A's* right, it was held, 1. that the matter submitted was the right to the use of the water, and such right was correctly made the subject of the award; 2. that so much of the award as related to the future conduct of the parties, was unauthorized by the submission, and void; 3. that no action would lie on such award, for an infringement of any right decided by it, although in a proper action, it would be conclusive evidence of such right.

This was an action of *assumpsit* on an award of arbitrators, tried at *Brooklyn, January* term, 1823, before *Brainard, J.*

The submission was as follows: "Whereas we, the undersigned, have a cause now subsisting between us, relative to the right of turning the water from a certain spring or rivulet, each one claiming the right of turning the same on to his own land; and now, to settle the same legally, we agree and bind ourselves, in the sum mentioned hereafter, to leave the same matter to the final decision of the Hon. *Zephaniah Swift* and to **the** Hon. *Calvin Goddard*, to be by them decided according to law; and we will abide said decision, under the penalty of 500 dollars, to be recovered of the party refusing to comply with the said decision.

*Isaac Gillet.*
*August* 1st, 1820.          *Amasa Dutton.*"

The award was as follows: "We, the subscribers, having been mutually elected arbitrators, by *Isaac Gillet* and *Amasa Dutton*, to settle a certain controversy subsisting between them, respecting the right to the use of a certain stream of water in *Lebanon*, claimed by both said parties, as by their submission, dated the 1st day of *August*, 1820; and having accepted said appointment, we met said parties, on this 4th day of *September*, 1820, in said *Lebanon*, and having heard them in the premises, we find and award, that the natural course of said stream is into and through the land of said *Gillet*, and that he has, and shall have, the prior right to and use of the same; and that said *Dutton* has no right to divert the same from said *Gillet's* land to his injury, but has a right, and shall have a right, to use any part of

said water not necessary for watering said *Gillet's* land. We also find, that said *Dutton's* land is so situated, that a great part of the year, when said water is raised by floods and rain, it will flow into said *Dutton's* land, and he has right to use the same for watering his said land, and said *Gillet* has no right to prevent the same; and neither party has right, by digging, or damming up said stream, on the land of *David Young*, above said lots, to divert said water from its natural course. Dated at *Lebanon*, this 24th day of *September*, 1820.

*Zephaniah Swift,* ⎫ Arbitrators."
*Calvin Goddard,* ⎭

The breach alleged was, that the defendant, on the 22d of *September*, 1820, and at divers times since, did, by digging and damming, on the land of said *David Young*, enlarge the channel of the water-course leading into the defendant's own land, and divert all the water running into the plaintiff's land, or that would at any time run therein, and turn the course of water in said stream into the defendant's own lot.

On the trial, the plaintiff, having given in evidence the submission and award, offered evidence to prove, that the defendant, at the time alleged in the declaration, had dug and erected a dam on the land of *David Young*; and claimed, that these facts, if proved, in connexion with the submission and award, entitled him to a recovery. This claim was resisted, by the defendant. The judge charged the jury conformably to the claim of the plaintiff; and he obtained a verdict. The defendant moved for a new trial, on the ground of misdirection.

*Goddard* and *Brainard*, in support of the motion, contended, 1. That the submission gave the arbitrators power to decide only upon the cause subsisting between the parties; the cause, and not the abstract right, being the matter submitted.

2. That if they had power to decide upon the right, they could not prescribe the future conduct of the parties in relation to the exercise of that right.

3. That *assumpsit* will not lie for a breach of this part of the award. The defendant never *promised*, that he would not dig on *David Young's* land. The submission is silent on the subject. The award at most shews only, that the defendant had no right to dig there.

*Cleaveland* and *W. T. Williams*, contra, contended, 1. That the object of the submission was, not merely, or principally, to

settle the suit commenced, but to determine who had the right to the use of the water. Each party claimed the right of turning the water on to his own land. To settle the same—*i. e.* the right—legally, they agreed to leave the matter to the decision of the the arbitrators named.

2. That the arbitrators did not exceed their powers, by prescribing the manner in which each party should use the water; for this depended on the right submitted.

3. That the action brought was the proper remedy for a breach of the award. By the submission, each party *promised* to abide the decision.

4. That if the plaintiff is not entitled to recover, the remedy of the defendant is by writ of error, and not by a motion for a new trial, as all that constitutes the foundation of the suit, or the ground of defence,—in short, the whole case,—appears upon the record.

HOSMER, Ch. J. The matter left to the determination of the arbitrators, in this case, was *the right* to a certain stream of water; and in this light, it was correctly considered, and decided, by the award. Construing the submission together, and laying no undue stress upon a particular expression, it is manifestly clear, that damages for an existing cause of action, was not the subject matter referred. The parties were desirous of having a settlement of the right, which should operate not merely retrospectively, but which should prevent all future controversy between them. Hence, the nature of the action between them was not mentioned, nor who was plaintiff and who defendant, nor what damages were demanded; but the reference to it, was cursory and incidental, because it was not the special object of the submission. The submission begins with a preamble: "Whereas we, the undersigned, have a cause now subsisting between us, relative to the right of turning the water from a certain spring or rivulet." It then proceeds, "now to settle the same, we agree and bind ourselves, &c., to leave the same matter, to the final decision, &c." To what do the words "*the same matter*" refer? Undoubtedly, to the next antecedent, "*the right of turning the water.*" The arbitrators, who had every advantage of construction, by certain knowledge of the intention of the parties, derived from the management of the cause before them, explicitly define, in their award, the subject matter of the submission. They declare, that they were mutually elected "to settle a controversy, respecting the right to the use of a certain stream of water;" and having heard the parties

they find and award what is the natural course of the water, and what the right of the parties respectively. Whether there had ever been an infringement of this right, by either party, the arbitrators do not decide. From an anxiety to prevent future controversy, and promote peace, they proceeded to define the mode, in which the right should be exercised; but this was beyond the limits of the submission. Having settled the right, they had done all, which they were authorised to do; and what shall constitute an observance or violation of it, must be left to the determination of the proper forum, whenever a controversy between the parties shall arise.

Upon an award of the preceding description, no action can be maintained. For an infringement of right, the suit must be brought in the accustomed manner, and the award, so far as it extends, will be conclusive evidence upon the matter in controversy. ''The settlement of the right, by the agents of the parties, rests on the same basis, as if it had been done by them personally.'' It furnishes no cause of action, but it supplies decisive evidence. *Keen* v. *Batshore,* 1 *Esp. Rep.* 194. *Kingston* v. *Phelps, Peake's Rep.* 228. *Daniel* v. *Pitt,* 1 *Campb.* 366. *Curley* v. *Dean,* 4 *Conn. Rep.* 259.

The charge of the court below, that the proof of the facts beforementioned, entitled the plaintiff to a verdict, was incorrect, and a new trial must be advised.

The other Judges were of the same opinion.

New trial to be granted.